The next case for argument is 16-1006, Viet Minh, Frozen Foods v. United States. This is a case for argument 16-1006, Viet Minh, Frozen Foods v. United States. Mr. Nicely. Good morning. May it please the Court, I'm Matt Nicely with Hughes-Hubbard & Green, counsel to the Viet Ime, which is a successor in interest to Grobes and Ime Industrial, Vietnam, Company Limited. This is a relatively straightforward case involving a unique, if somewhat Kafkaesque, set of facts. In the fourth administrative review of the AD order on frozen shrimp from Vietnam, Grobes and Ime sought to be treated as a voluntary respondent, in order to seek at that time what was called three zeros replication. I'm sorry to cut you off, but time is limited, and I think we all know what the facts here, but it seems, I mean, you may characterize it as Kafkaesque, but the fact is that you asked for this, and then you wanted to change your mind, and the Congress said no. Why is that improper, unlawful? Why is that a problem here? Right. The reason is because several years, two years have gone by during the course of the litigation. During that period of time, and the litigation before Judge Pogue at the CIT was lengthier than perhaps normal, because there were multiple parties, multiple claims having been brought. It was a consolidated appeal. Two years passed. Two years passed between what? Between the Commerce Department's original AR4 final results and the judge's final decision in that first appeal. During that time, a change in ownership occurred with regard to the company at issue. What used to be called Grobes became Ime. It was the subject of a relatively messy divorce between the joint venture partners. As a result, it became clear to the company over time that it was going to be difficult, if not impossible, to follow through with what it had originally requested. What was that period of time? What was the length of that period of time between – you were talking about the original period, the protracted period between Commerce and the CIT ordering Commerce to go forward. Then what amount of time passed before you went back and asked to terminate? The change in ownership occurred during the course of the litigation. The court ultimately decided – Judge Pogue decided that this should go back to the Commerce Department for them to actually go through with a voluntary – an examination of the company. Did the change in ownership occur before that decision issued? Yes, it did. It did. That it was going to be difficult, that the divorce between the joint venture parties was going to make that difficult for them to follow through. But I'm not sure you answered my question, which was what period of time elapsed between the CIT's ordering Commerce to go forward and the time that you came forward and said, never mind. The final judgment was issued by the court in September, and we went to the Commerce Department with our withdrawal request in December. It was about 60 days after Commerce had actually issued an initiation notice for the reconducted review. But by that point, importantly, nothing had happened in the reconducted review. The Commerce Department had not issued any questionnaires. There was not an expenditure of government resources with regard to the case at that point. Well, they sent you a supplemental questionnaire right around the same time you made your withdrawal. Thirty days later, about a month later. That's right. But not at the same time. The government is telling us they were putting in time promptly as soon as they announced in their notice, which was before you made your withdrawal, that they were going to do this examination per the CIT's order that commanded them to based on your request that they do it. Your Honor, at that point, they had not issued the questionnaire. They had not – the question they ultimately issued, the supplemental questionnaire they ultimately issued was a four-page questionnaire. The expenditure of resources that would have happened by the time we requested that we halt the proceedings and not go any further could not have been significant by that point. I'm not sure how to think about the case. I mean one thing that strikes me is your position is not particularly sympathetic given everything that happened before your request to withdraw. But beyond that, is it your view that Commerce had no choice, no discretion? It was commanded by law that they must have withdrawn considering you as a voluntary respondent once you made that withdrawal request? It's our position that it is an error of law for them to have defined that they had no choice but to proceed because it had been taken outside the authority of the CIT. There was a final judgment. There was not a pending remand. There was a final judgment. If they felt like they needed to go to the judge and get the judge's approval, as Judge Pogue pointed out in his decision, they could have done so under CIT Rule 60. Why couldn't you have done that? Because Rule 60B does not apply to us as the party. The party that is specifically discussed as the relevant party in Rule 60B is – may relieve a – on motion and just terms, the court may relieve a party or its legal representative from a final judgment. The party that had the burden was the Commerce Department. So it was the Commerce Department for – it was the entity that could have taken advantage of Rule 60B. I'm not sure I'm clear on what you're arguing. So you're saying the error here was Commerce perceived that it was compelled to do this. Your view is that they had the discretion as to whether or not to let you rescind or not. That's right. And so why are you asking for a remand to rescind the voluntary examination? If that's your story, why wouldn't it at most be send it back for Commerce to make this determination at its discretion? It's a – I guess because it's a two-step process. Number one, they have claimed they had no choice. And what I'm saying is, yes, they did have a choice. They could have rescinded. The fact that there was a final judgment didn't tie their hands, didn't prevent them from doing that. Did you ever recommend below that, hey, Commerce, why don't you file a 60B motion to the trade court? I didn't specifically – we didn't specifically propose that method. By the time I got any reaction from them, all I had was no reaction other than a supplemental questionnaire in front of me. Now, didn't the CIT say, well, even if it was in their discretion, they had just reason for not rescinding the proceeding? And so why isn't that enough given that what you're saying is they certainly had the power to decide to go ahead and proceed with this investigation? They had the power. They also had the power not to. And what I'm – and what we have alleged is that it was arbitrary and capricious for them to proceed under the facts of the case. The fact that time had – the amount of time that had elapsed during the course of the appeal and the events that occurred during that time, which was most importantly the change in ownership of the company, put the company in a situation where going forward with what otherwise would have been a benefit to them, right, a benefit of a lower duty rate, benefit potentially of revocation of the order. The company was saying, okay, because of the changes that have occurred in our corporate structure, we can't proceed with this. And as a result, we are willing to stand pat with what you had assigned to us in the first place. But what about the fact that there was all that litigation in the interim of all those various appeals to the CIT? Doesn't that activity count in any way towards commerce's – Doesn't it count? Well, I mean I see, for example, 19 CFR section 351.204.d.2 says that a voluntary respondent accepted for individual reexamination will be subject to the same requirements as a mandatory respondent. Right, but to apply that provision in this context in the aftermath of litigation during which a long period of time had elapsed and during which a change in the company's corporate structure had occurred makes that provision not as applicable as it would be if we had been in a situation where the review had proceeded, a short period of time had elapsed during the review proceeding, and suddenly they chose us as a voluntary and we say, oh, no, we don't really want to do it now, right? Very different set of facts. The other side has pointed out some other cases such as carbon steel from Sweden. In that situation, the company was chosen as a voluntary respondent. They went through several pieces, parts of the proceeding, and suddenly a cost investigation was initiated, and the company said, oh, you know what? I don't want to do that. Let's stop. And the Commerce Department said no. Well, by that point, of course, you go that far along, you're in the proceeding, and the company says they want to back out. I don't blame the Commerce Department for doing it. In this instance, I think it's completely different. With all due respect, Your Honor, I think we are or should be viewed in a sympathetic manner because they're the ones in the first place that didn't follow the law. If they had followed the law in the first place and granted our request to be chosen as a voluntary respondent, we would have happily gone through the whole thing at that time. But the amount of time that passed in the interim is what caused us to be in the position we're in, and I think we are far more sympathetic than you give me any credit for in light of that passage of time. The reason I called it Kafkaesque is because the company requested to be treated as voluntary, had the reason to be treated as voluntary, and convinced Judge Pogue that we should have been treated as voluntary. They didn't do what they should have done back in 2009 and treated us a voluntary respondent then. But you could have withdrawn the request and mooted the litigation in front of the trade court in Grove S. 2 so that there never had to be a Grove S. 2. At that time, we didn't know that this was going to be a problem. A change of ownership happened well before the order in Grove S. 2 issued by the trade court. As you can imagine, Your Honor, changes in ownership don't always necessarily – and indicate to the company the extent to which they'd have difficulty in verifying, et cetera, whatever would have to happen in the course of the reconducted review. And the amount of time that passed in the interim is what caused the problem. Regardless of whether your facts are sympathetic or not, in work order review, you look at the law, and I don't see what legal error you're saying other than that commerce should not have understood that it was bound by the judgment of the CIT. The standard of review here is whether or not – and part of the standard of review that we think is relevant is in accordance with law. Part over the course – and you have issued some decisions in this regard – part of what's relevant in determining that is not merely Chevron 1 and 2, but also whether or not the decision is an abuse of discretion, whether or not the decision is arbitrary and capricious. If it is not, then it is not in accordance with law. What we're telling you is that we think that this case is one in which the company is, in effect, punished for having won the appeal previously, an appeal that, by the way, as we mentioned in our reply brief, led to commerce convincing the Congress to change the law because they wanted more discretion as to whether or not to choose companies to be unfair respondents or not. Obviously, this was very important to the Commerce Department, and they were very angry at us about winning this case. So the fact is we think that this is a very good example of capricious – arbitrary and capricious action by the Commerce Department and therefore is indeed – should be viewed as being not in accordance with law. Why don't we hear from you? Good morning. Good morning. May it please the Court. So just to clear up a few things, this case does come down to timing, and as Groves Council indicated, in December of 2010, that's when the change of ownership occurred, and then they pursued litigation for two years. And in Groves 2, the order was issued in approximately July 30th of 2012. And so after that point, Groves was fully aware that the court had ordered Commerce to individually examine Groves as a voluntary respondent. And then it wasn't until final judgment was entered in mid-September, approximately two months later, that the case was essentially – Groves had received all the relief it could from the court, and it was back under Commerce's regulations. And then still further, there was an additional month before Commerce issued the initiation notice that it would be individually examining Groves as a voluntary respondent. And so even from that timeframe, you have an additional month. And so essentially what happened here is that unbeknownst to Commerce, Groves suddenly and inexplicably, after about two years of litigation, determined that it wouldn't be able to go through the process of individual examination as a voluntary respondent. And so more importantly, once that initiation notice issued, then Commerce, by its own regulations, was required to treat Groves as a voluntary respondent, and those are treated in the same manner as a mandatory respondent. But I thought – didn't the CIT clarify that you did have the discretion, that Commerce did have the discretion to grant or not grant? To grant or not grant? The rescission, the request for rescission. So that gets into – Groves tried to argue that by analogy, the rescission regulation should apply, and the trial court correctly determined that that's a strained analogy at best. And the reason why that doesn't apply – But what does the CIT, the Court of International Trade, say about whether or not Commerce had the authority to grant the rescission if it wished? That the regulation is not applicable. And so the regulation that applies – Right, but just to follow up on the Chief's question, the way the trade court analyzed the situation and said, well, there's substantial evidence here supporting the reasonableness of Commerce's choice in electing to move forward rather than electing to terminate the review. So I guess the question I also have is implicitly the trade court is saying that there was discretion here for Commerce to back away if it wanted to. And that's – I don't know if that's the Chief's question, but I guess that's my question. Is it your view, is it the government's view, that in situations like this, after you've accepted a voluntary respondent for an examination, that Commerce retains the discretion to shut that down if it sees fit? The answer is no to that, Your Honor, and there's a couple of reasons. The answer is no? No. You don't have the discretion. No, not in this circumstance. When Commerce would have had the discretion is that period of time from the court's order July 30th before the initiation notice. And at that time, Grobesque could have come to Commerce and potentially talked about settlement or done some kind of change to that, but they never did, and so they were tardy. And so once the initiation notice came out and Commerce said that it was going to treat Grobesque as a voluntary respondent, that's under 351.204 D2. And according to that regulation, voluntary respondents are treated in the same manner as mandatory respondents. Could you say G2? D2, I apologize. And mandatory respondents can't just pull out reviews. No, no. That's, to me, a different question, although very related. I mean, my question wasn't whether a mandatory respondent or an accepted voluntary respondent ever has the right to unilaterally withdraw. My question was really more about Commerce and Commerce's power and authority once there is a review initiated, either for a mandatory respondent or a voluntary respondent. Are there circumstances in which Commerce, for whatever the case may be, circumstances that it elects and decides to shut down a review before it ever gets to the finish line? Or is it your view that when it comes to these sorts of matters, Commerce has to push all the way to the finish line regardless? My view is more the latter, where part of Commerce's regulation- Is that the government's view? That is the government's view. So the regulation's in place just as- and what's a little confusing here is that once the voluntary respondent is accepted, then it is treated as if it is a mandatory respondent. And so Commerce, with mandatory respondents and voluntary respondents, if they don't cooperate, which Groves did here, then that's when you go into possibly looking at adverse facts available. And where Commerce could have had discretion, to some extent, was if Grovest had, in their responses to the supplemental questionnaires, come back and said, you know, for these various reasons, we're having difficulty responding. And then Commerce could have, pursuant to one of its other regulations, actually worked with Grovest. And the trial court mentioned that, and that's 19 U.S.C. section 1677M. But Grovest never told Commerce that it needed to maybe modify what Commerce was asking for. Instead, Grovest just said, change of ownership, can't do it, please let us out of this, rescind the review. But what Grovest failed to understand was that the rescission regulation that they were referring to is rescission of the entire review. So by analogy, Grovest argued before the trial court, and the trial court rejected this argument, was that you can't apply this rescission regulation, which is at the start of a review, and all of a sudden ask, once you've been accepted as a voluntary respondent, to pull out of that review and then still get the rate you would have had before. And so all of this comes down to the fact that, for years, Grovest sought in litigation to, instead of receive the 3.76% rate, they wanted to be reviewed because they thought they could get a 0% rate. Except then, once they were actually accepted as a voluntary respondent, they didn't cooperate, the rate was actually corroborated, and Grovest does not contest the 25.76% rate that they received. And it all came down to- They contest that it's punitive against them. They do argue that it's punitive, except, as the trial court correctly noted, commerce can apply adverse facts available if it's in accordance with statutory requirements. And this court's case concerning that is KYD. And commerce did apply the 25.76% rate, which was the all-others Vietnam rate that was on the record, because Grovest did not cooperate. And that's not punitive, more importantly, although Grovest cites Gallant Ocean, where it's five times the percentage rate. Sorry, you just said it's the all-others rate. I thought the all-others rate in this context was 3.92. That's the separate rate. The separate rate. And that is the rate that Grovest would have received if it had not pursued the many years of litigation. But Grovest tries to say that that 25.76% rate is punitive, but, again, it's not because it was corroborated, and Grovest does not contest that that rate was corroborated. And, more importantly, What does it mean corroborated? How, what, where? Oh, that there was support in the record. And they don't contest how that rate was calculated. So Grovest isn't saying that that rate is incorrect, and that is the Vietnam all-others rate. But so what you do have here is that, essentially, Grovest asked for this voluntary respondent status. The timing turned out to not work in their favor, apparently. The first time Commerce knew that their voluntary review wouldn't be possible was about two years after they started this litigation. They filed the first case in December of 2010, and it wasn't until December 2012, where all of a sudden they're coming to Commerce, that, well, what does that matter? If maybe taking on them at their word that they didn't have the problems, that the problems didn't surface until that time. So if you accept that premise, then why are you sort of punishing them for waiting too long? Are you just saying that the law doesn't allow, because of the passage of time, for you to go do something else? The law doesn't allow for the passage of time. Here, Grovest is arguing that, for some reason, the passage of time should be factored into how to apply Commerce's regulations. And, again, when it comes to working with Grovest, Grovest never requested Commerce to do that. They just said straight out, and that's actually in their responses, and that's in the joint appendix. The February 13th letter, 2013, is at 3296, and then their very first letter, which was December 12th, is at 3275, and I'll quote. This is all they were telling Commerce for why they wanted out of this voluntary respondent review. At 3275, they said, the request to withdraw, we do so due to the significant management, personnel, and accounting changes that have occurred at VIA EMA since the period of review. In short, the administrative and legal costs of this examination are greater than the company wishes to incur at this time. And that was insufficient to even signal to Commerce that they, pursuant to, as I mentioned earlier, 19 U.S.C. 1677M, that there was some difficulty or somehow wished to cooperate. And it all comes down to the fact that until Commerce issued the initiation notice in October of 2012, Grobest could have ended this litigation and could have gone back to that 3.96% rate. But once Commerce issued that initiation notice, it was back in Commerce's regulations, and Commerce treated Grobest as a voluntary respondent, which it had sought through litigation to be treated as. And as part of that, once Grobest failed to cooperate, Commerce ended up applying as-is tax available, which was the higher 25.76% rate.  Thank you. I'm going to turn it over to your colleague for three minutes. Thank you. May it please the court, my name is Michelle Lee, and I'm here on behalf of Ad Hoc Stream Trade Action Committee. Today, I would like to emphasize one point. Commerce's decision to decline VIMA's request is fully consistent with the statute, the agency's regulations, and the agency's previous practice. In accordance with the statute and the regulations, Commerce directly followed its previous practice as exemplified in certain coal-rolled, carbon-steel flat products from Sweden. In that proceeding, Commerce refused to allow the withdrawal of a voluntary respondent after it had been selected for review, and applied AFA to that respondent after it refused to participate in the proceeding. VIMA, the successor of Grobest, argues in its reply brief that the Sweden coal-rolled case can be distinguished on the facts. VIMA asserts that, unlike in Sweden coal-rolled, it was the carbon changes occurring gradually over time that led to its withdrawal for the request of voluntary respondent status. But your honor, these facts have no basis in the administrative records. VIMA refused to answer Commerce's questions, and VIMA gave no opportunity to the agency to evaluate the explanation now presented. VIMA cannot now provide expanded as-posed factor reasoning to defend its actions. Had VIMA presented this full description during the administrative review, Commerce might have considered it. But Commerce might have considered a lot of things. VIMA was not the only party to the proceeding. We asked that VIMA be subject to administrative review. That request was never withdrawn. And when VIMA refused to respond to Commerce's request for information, we placed evidence on the records alleging that VIMA was seeking to avoid answering questions relating to its US importer affiliates. In these circumstances, we believe that Commerce's application of adverse facts available is lawful and entirely appropriate. Thank you. Thank you. Matt, nice to see you again for VMA. I want to draw the court's attention to one very critical part of the final results of the reconducted review, in which the government said, with regard to the domestic producer's claim that the department does not have the authority to rescind the review, this is on page 3378 of our joint appendix, does not have the authority to rescind the review of a voluntary respondent once it initiates, we disagree. And note that the department previously rescinded the review of voluntary respondents. In other words, the Commerce Department itself today, they're telling you that they don't rescind after initiation, but they specifically responded to the domestic producers in this case, saying that they could, they did, that they did have that ability, and that they had done so in the past, and they cited to the Honey case. So the notion that they didn't have the ability to do this merely because they'd initiated it is patently false. They know, and they said in this case that they had that ability. There's been discussion about our strained analogy to the relevant portions of the regulations, talking about the balancing test. Again, I just draw your attention to that. We recognize that that does not apply specifically to us. What we're doing is we're using it as an example. Given the unique set of facts post-litigation, right, the unique set of facts, it's a useful portion of the regulations to see whether or not it is reasonable or not what Commerce did in this case. In our view, given the lack of expenditure of government resources, it would have made perfect sense for them to rescind. And not just perfect sense, given the facts of the case, it is an abuse of discretion for them to have not done so. Finally... At some point Commerce noted that there were discrepancies in those responses to the questionnaire form that Grobust had filled out, right? I'm sorry, what questionnaires? In the ones that we had submitted voluntarily during the course of the review? No, earlier. Didn't Grobust fill out some questionnaire and then when Commerce finally reviewed it, they said, hmm, there's some discrepancies here. So, two very important issues. Number one, yes, in order to become a voluntary respondent, one of the unfortunate aspects of the law is that you have to go through and actually fill out the entire very long questionnaire response in order to be even considered as a voluntary respondent. So you fill it out and you hope that they'll look at it and examine it, right, which they decided not to. Then later, after Judge Pope remanded for them to reconduct the review, and once that was done under the final judgment, we asked first for the review to be withdrawn. Not until a month thereafter did they issue a supplemental questionnaire. At the time we requested it to be withdrawn, we had no idea what supplemental questionnaires they might issue. It is common. In fact, I don't know of a single case in which the Commerce Department does not issue supplemental questionnaires to companies that are fully examined. So it should not have been particularly odd for them to have done so here. I think I'm over my time. Thank you. We thank both sides, and the case is submitted.